Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence, or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the deputy commissioner as follows.
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties at the hearing before the deputy commissioner and in a Pre-trial Agreement dated March 17, 1995 as
STIPULATIONS
1. All parties were designated correctly, and there was no question as to misjoinder or non-joinder of parties.
2. All parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times hereto.
3. At such times, an employment relationship existed between Plaintiff and Employer-Defendant.
4. Carrier-Defendant Wausau Insurance Company was the carrier of Workers' Compensation Insurance on the risk at the time of the alleged accident occurring on or about January 8 or January 12, 1994.
5. Carrier-Defendant CompSource was the carrier of Workers' Compensation Insurance on the risk at the time of the alleged accident occurring on or about March 14, 1994.
6. A Form 22 Wage Chart was prepared on August 13, 1994, for the injury date of January 8, 1994, and was stipulated into evidence by the parties as evidence of Plaintiff's earnings.
7. A Form 22 Wage Chart was prepared on August 13, 1994, for the injury date of March 14, 1994, and was stipulated into evidence by the parties as evidence of Plaintiff's earnings.
* * * * * * * * * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. Plaintiff is a thirty-three-year-old woman who was employed by the Employer-defendant on or about January 8, 1994, and had been so employed as a punch-press operator for approximately one and one-half (1 1/2) years.
2. Based on the Form 22 Wage Chart prepared by Employer-defendant Plaintiff was earning an average weekly wage of TWO HUNDRED SEVENTY-ONE AND 53/100 DOLLARS ($271.53) on January 8, 1994, yielding a compensation rate of ONE HUNDRED EIGHTY-ONE AND 02/100 DOLLARS ($181.02) per week.
3. Plaintiff's employment with Employer-Defendant consisted of operation of a punch press, wherein her regular duties would be to pick up sheets of metal from a pallet, place them into the machine, operate the machine, and then place the form metal on another pallet. The typical weight for these sheets of metal ranged from one to fifteen (1-15) pounds.
4. Plaintiff began noticing back pain on or about January 8, 1994 when she was placed on an assignment where she had to lift doors weighing approximately twenty-five pounds from the floor and placing them onto a machine. These doors were much heavier than the parts she usually lifted. Plaintiff reported back pain to her supervisor immediately but was kept on the job for several more days until she finished. Plaintiff did not see a doctor until four days later on January 12, 1994.
5. According to Employer-defendant's Work Assignments Production Record, Plaintiff was working on six-pound wrapping pieces from Monday, January 10, 1994, through Wednesday, January 12, 1994. Although there is some dispute concerning when plaintiff noticed back pain, based upon the greater weight of the evidence plaintiff's back pain began on or about January 8, 1994.
6. On January 12, 1994, Plaintiff was seen at Stanly Memorial Hospital Occupational Health Services by Dr. Eugene Coles, who diagnosed Plaintiff as having sustained a lumbosacral strain. Plaintiff reported to him that she had been experiencing pain in her low and mid back for about five days and that it had worsened on that day, January 12, 1994. Plaintiff was kept off work until the following Monday, January 17, 1994, when she was released to return to full-duty work without physical restrictions. Plaintiff was also earning full wages at this time.
7. From January 17, 1994, through March 14, 1994, Plaintiff missed no further time from work as a result of her back injury stemming from the incident on or about January 8, 1994.
8. On March 14, 1994, Plaintiff was again placed on the larger-than-usual 400 Amp doors. On this date at approximately 11:00 a.m., Plaintiff experienced a sudden increase in pain in her back while lifting one of the 400 Amp doors, which she described as a "pull" in her back. Plaintiff qualified this pain as "real bad" and different from the pain she initially felt in her back following the January 1994 incident.
9. Plaintiff subsequently received medical attention from Dr. Burke at Cabarrus Orthopedic Clinic and from Dr. Charles P. Clarke at the Albemarle Chiropractic Clinic. Upon examination by both of these doctors, it was noted that Plaintiff was suffering from an increase in lumbar lordosis and spondylolisthesis at the L-5 level with forward slippage of the L-5 vertebrae onto the S-1 vertebrae. Besides these congenital problems, the plaintiff was diagnosed with an acute, moderate lumbar strain, together with sciatic neuritis radiculitis.
10. Following this March 14, 1994 incident, a Form 19 was filled out and submitted by Plaintiff together with Mildred Russell on March 17, 1994 describing the earlier lifting incident. On that Form 19, Ms. Russell recorded that "employee states that while operating the press, picking up and putting down heavy parts, her back started hurting." While treating with Dr. Coles later that day, Plaintiff reported "lifting heavy objects" on Monday, March 14, 1994, at which time her back pain got significantly worse.
11. After briefly returning to work for a few days in April of 1994, Plaintiff began developing adjoining pain in her thighs. On July 20, 1994, Dr. Burke limited Plaintiff's' lifting restrictions to ten (10) pounds.
12. Plaintiff received chiropractic care from Dr. Charles Clark in March and April of 1994. Dr. Clark indicated that Plaintiff was unable to perform her duties from March 15, 1994 through May 4, 1994.
13. On April 5, 1994, Plaintiff came under the care of Dr. Frank B. Sellers and Dr. David J. Burke of Cabarrus Orthopaedic Clinic.
14. On June 27, 1994, Dr. Sellers wrote an out of work slip for Plaintiff for 30 days as the result of her back injury.
15. On July 20, 1994, Dr. Burke released Plaintiff to return to work with a 10 pound lifting restriction as a result of her back injury.
16. On or about July 25, 1994, Plaintiff attempted to return to work with Employer-defendant, but was advised that no light duty within her restrictions was available. Because these restrictions were permanent according to Dr. Burke, Employer-defendant terminated Plaintiff's employment on or about July 25, 1994.
17. Subsequent to the termination of her employment with Employer-defendant, Plaintiff made reasonable efforts to obtain work within her restrictions. As of March 27, 1995, Plaintiff has been unable to find work within her restrictions.
18. On March 21, 1995, Plaintiff returned to Dr. Burke of Cabarrus Orthopaedics for a final evaluation. Dr. Burke was of the opinion that Plaintiff had sustained a 5% permanent partial disability of the lumbar spine as a result of her work related injuries.
19. Plaintiff drew short term disability benefits from a wholly employer funded disability plan in March, April, June and July of 1994 for a total of 25 days. Plaintiff received $12.00 per day for 25 days of short term disability benefits.
20. Plaintiff drew $125.00 per week of unemployment insurance benefits between July 27, 1994 and January 1995.
* * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On or about January 8, 1994 plaintiff sustained an injury due to a specific traumatic incident of the work assigned which constitutes an injury by accident arising out of and in the course of her employment with Employer-defendant Plaintiff missed a total of two days from work due to this injury and is entitled to no temporary total disability compensation during this period. Plaintiff returned to work on January 17, 1994 at her regular duties earning the same wages. N.C. Gen. Stat. § 97-2 (6); N.C. Gen. Stat. § 97-28.
2. On March 14, 1994 Plaintiff experienced another back injury arising out of and in the course of her employment which was the direct result of a specific traumatic incident of the work assigned when she lifted a large object at work and immediately felt a "pull" in her back. The March 14, 1994 injury constituted either a new injury or a material aggravation of the January 1994 back injury. N.C. Gen. Stat. § 97-2 (6).
3. Plaintiff was temporarily and totally disabled as a result of her March 14, 1994 injury from March 15, 1994, through May 4, 1994, and from June 27, 1994 through the date of the hearing and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. The carrier on the risk on March 14, 1994 is liable for all compensation and medical expenses due Plaintiff subsequent to March 14, 1994.
5. Employer-defendant and Carrier-defendant CompSource are entitled to a credit for the amount plaintiff received from the wholly employer funded short term disability plan. N.C. Gen. Stat. § 97-42.
6. Employer-defendant and Carrier-defendant CompSource are entitled to a credit for unemployment insurance benefits plaintiff received. N.C. Gen. Stat. § 97-42.1.
7. Plaintiff was released to return to work with a ten pound lifting limit restriction on July 21, 1994. Since her employer did not have light duty work available for her and terminated her employment, her disability is presumed to continue until she returns to work at wages equal to those she was receiving at the time her injury occurred. Therefore, Plaintiff is entitled to continuing temporary total disability benefits from June 27, 1994 through the date of the hearing and continuing until she returns to work at wages equal to those she was receiving at the time of her injury, or until such time the defendant obtains approval from the Industrial Commission to suspend or terminate benefits.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for indemnity benefits pursuant to her January 1994 injury is hereby DENIED. Carrier-defendant Wausau shall pay medical expenses incurred due to plaintiff's injury from January 8, 1994 through March 13, 1994.
2. Employer-defendant and Carrier-defendant CompSource shall pay Plaintiff temporary total benefits at the rate of $181.02 per week for the following periods: March 15, 1994 through May 4, 1994; June 27, 1994 through July 25, 1994; and from July 25 1994 through the date of the hearing and continuing until plaintiff returns to work at wages equal to those she was receiving at the time of her injury, or until such time the Defendant obtains approval from the Industrial Commission to suspend or terminate benefits.
3. Employer-defendant and Carrier CompSource are entitled to a credit for payments plaintiff received from the wholly employer funded short term disability plan. Employer-defendant and Carrier CompSource are entitled to a credit for unemployment insurance benefits plaintiff received.
4. Employer-defendant and Carrier CompSource shall pay all medical bills incurred by plaintiff on or after March 14, 1994 for back injury, or to be incurred by Plaintiff for treatment as a result of her March 14, 1994 injury, when bills for the same have been submitted and approved through procedures adopted by the Industrial Commission.
5. An attorney's fee in the amount of 25% of the accrued compensation awarded herein to plaintiff is hereby approved for Plaintiff's counsel which fee shall be deducted from the aforesaid award and paid directly to Plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth check due plaintiff which shall be deducted and paid directly to counsel.
6. Defendants shall pay the costs.
* * * * * * * * * * * * * * *
ORDER
1. Plaintiff's Motion For Interest After Hearing Pursuant to N.C. Gen. Stat. § 97-86.2 is ALLOWED;
2. Plaintiff's Motion for Expenses Of Appeal Pursuant to N.C. Gen. Stat. § 97-88 is DENIED.
 S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________________ LAURA K. MAVRETIC COMMISSIONER
BSB:be